**JOHN D. SULLIVAN**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 657-6101
FAX: (406) 657-6989
Email: John.Sullivan@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **JOSE SOLTERO,** <br><br> Defendant. | **CR 17-15-BLG-SPW** <br><br> **GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States, represented by Assistant U.S. Attorney John D. Sullivan, files the following memorandum in anticipation of the sentencing hearing set in this case on January 17, 2018.

### INTRODUCTION

Jose Soltero pleaded guilty to conspiracy to possess with the intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846 on

1

September 5, 2017.  The Presentence Investigation Report ("PSR") prepared by the United States Probation Office has Soltero's advisory guideline range calculated at 235 to 293 months of imprisonment based on a total offense level of 38 and a criminal history category I.  The United States has no objection to the PSR and respectfully requests that the Court impose a sentence of 235 months of imprisonment to be followed by five years of supervised release.

## ARGUMENT

    A.    **Soltero's Objections**

Soltero has raised two objections to the calculation of the advisory guideline range.  The government agrees with the PSR as written, however, and urges the Court to overrule both of his objections.

        1.    **The base offense level is accurately scored at 38 in the PSR.**

At the outset, the plea agreement in this case includes a joint stipulation that the base offense level should be 38.  Doc. 43 at 7.  Soltero's objections to the contrary constitute a breach of the plea agreement.  Regardless, the base offense level is accurately scored at a level 38 under U.S.S.G. § 2D1.1(c)(1), which applies in cases involving more than 4.5 KG of actual methamphetamine.

On October 11, 2016, agents with the Eastern Montana HIDTA Task Force executed a search warrant at co-defendant Michael Lange's residence.  During the search, they discovered over a kilogram of actual methamphetamine.  PSR ¶ 13.

x

Soltero was present at Lange's residence at the time and submitted to an interview with agents after waiving his *Miranda* rights. During the course of the interview, Soltero admitted that he "hooked" Lange up with suppliers of methamphetamine and "middled" deals three or four times starting six months earlier.

Although he did not supply the methamphetamine himself, Soltero said that he was responsible for making arrangements between Lange and the source of his supply. Soltero estimated that Lange made eight trips to California and specifically named locations where the meets between Lange and the supplier occurred, including three off of Interstate 15. Just during the week prior to the interview, Soltero stated that Lange obtained six pounds of methamphetamine and nearly one pound of cocaine. He was able to describe the packaging of the methamphetamine, which he saw during a meeting at Jack-In-The-Box in Riverside, California. He said the methamphetamine was packed cylindrically, like a "football," with pound quantities wrapped up with saran wrap and brown paper over the top of it. Soltero also arranged other transactions, including one for seven pounds of methamphetamine. The smallest deal that he facilitated between Lange and the California sources of supply was for two pounds.

Conservatively—based on his admissions alone—Soltero was involved in the purchase of 18 pounds of methamphetamine during the course of this conspiracy. His objection to the base offense level should be overruled.

3

### 2.  Soltero was a manager or supervisor of the conspiracy under U.S.S.G. § 3B1.1(b).

Under U.S.S.G. § 3B1.1(b), a defendant's offense level increases by three levels if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ." The commentary states that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1 cmt. n. 2. The Court considers "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* at cmt. n. 4.

In this case, Soltero was a manager or supervisor of a criminal conspiracy that involved Lange, Sherry Murphy (CR 17-07-BLG-SPW), the unindicted source of supply known as "Manny," along with a number of additional individuals described in PSR ¶¶ 17-20, 30. Soltero does not contest that the number of individuals involved in the conspiracy exceeded five, but says that he was simply a middleman and did not control any other participants in the conspiracy.

The government agrees with the PSR writer's response to Soltero's objection, however. Soltero was an indispensable participant in this conspiracy

because he alone facilitated the transactions between "Manny" and Lange because Lange did not speak Spanish.  As a result, the whole conspiracy hinged on Soltero's ability to communicate with both parties and set meetings during which the methamphetamine changed hands from the source of supply to Lange, who was responsible for distributing the methamphetamine into the Billings community. *See United States v. Montano*, 250 F.3d 709, 716 (9th Cir. 2001) (role enhancement upheld where "defendant organizes others in the commission of the criminal activity . . . reflect[ing] the greater level of culpability of the participant who arranges the transaction") (internal quotation marks omitted); *see also United States v. Franco*, 136 F.3d 622, 631 (9th Cir. 1998).

In addition, Soltero was responsible for directing multiple unindicted individuals, received between $11,000 and $13,000 from Murphy to presumably give to the sources of supply for methamphetamine, received three firearms that Murphy purchased and gave to Lange for Soltero, and attempted to recruit additional accomplices into the conspiracy.  For these reasons, and because Soltero's indispensable role in this offense, his objection should be overruled.[1]

---

[1] Even if the Court sustains Soltero's objection to the three-level role enhancement, he still qualifies for a two-level enhancement under U.S.S.G. § 3B1.1(c) at best.  *See Montano*, 250 F.3d at 716.  In addition, he still has not truthfully provided to the government all information known about this offense.  For either or both of these reasons, Soltero is not eligible for the safety valve under 18 U.S.C. § 3553(f).

## B. Sentence Recommendation

Title 18 U.S.C. § 3553(a)(2) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with the following purposes: (1) to reflect the seriousness of the offense; (2) to promote respect for the law; (3) to provide just punishment; (4) to afford adequate deterrence to criminal conduct; (5) to protect the public from further crimes of the defendant; and (6) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Court is also required to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the sentencing guidelines and policy statements, to avoid unwarranted sentencing disparities, and to provide for restitution to victims. 18 U.S.C. § 3553(a)(1), (3)-(7).

In this case, a term of imprisonment at the low-end of the advisory guideline range should be a sufficient but not greater than necessary sentence. Soltero committed a very serious offense and is uniquely responsible for facilitating the distribution of significant quantities of methamphetamine in the Billings area. Without Soltero, nearly 20 pounds of methamphetamine, conservatively, would not have made its way into Montana for redistribution. Any quantity of methamphetamine has a harmful effect on the community, but the quantity that

Soltero is responsible for, is especially toxic.  The seriousness of the offense, need for just punishment, and to deter Soltero from committing future offenses can all be satisfied with a low-end sentence.  And to his credit, Soltero has a very limited criminal history and has been gainfully employed in the past.  As a result, the government respectfully recommends that the Court impose a sentence of 235 months of imprisonment with five years of supervised release to follow.

DATED this 2nd day of January, 2018.

>KURT G. ALME
>United States Attorney
>
>*/s/ John D. Sullivan*
>JOHN D. SULLIVAN
>Assistant U.S. Attorney